Good morning. May it please the court, Christy Hughes from Federal Defenders on behalf of Mr. Reyes. I'm going to attempt to reserve two minutes for rebuttal. Your Honors, after the government successfully excluded the lies Vanessa Sanchez told to officers about the Xdera, it then turned around and argued in closing that Mr. Reyes had only presented scant evidence about Vanessa Sanchez and that there was not enough evidence for the jury to evaluate her involvement. The government's argument in closing makes Mr. Reyes' point perfectly. He was denied a meaningful opportunity to present a complete defense. He had attempted to introduce her statements, her lies, to show her consciousness of guilt about the drugs that were found in that Xdera. Counsel, here's the problem that I have with your argument, and maybe you can help me with this. If all of the statements had been admitted, it would have been absolutely clear that she was lying and she knew about the drugs in the car. But just because she knew doesn't mean that your client didn't know. That is, more than one person can be involved, more than one person can know. And so I guess I'm not really sure where it would get you in terms of prejudice. Well, I have two responses. One, that issue came up in the recent Stever case with the Mexican drug smuggling organization that was growing the marijuana in Oregon. And the government argued the same thing. You know, this doesn't necessarily exclude the defendant. He could have been colluding with that organization. And this court said that still doesn't matter. It's still relevant. And in our case, I think that's true. It made it less likely that he knew about the drugs. And there was absolutely no testimony or evidence in this trial that they were working together. There wasn't the normal evidence the government admits of telephone calls going back and forth or previous conversations. There was absolutely no allegation that he and Vanessa Sanchez were working together or had previously met. And so that wasn't an issue in the case. So had the jury heard that he had denied knowledge, there was nothing weird about the car, he wasn't acting nervous at primary, any of those things, and yet here was this woman who knew about those drugs, given her statements, they could have concluded that she knew and he didn't, given the total lack of a connection between the two. Why would you want to leave your inventory in the vehicle after you sold it, unless you were in a conspiracy and were going to get it back? You're just throwing away all your valuable inventory. Well, I will say from my experience that in these border bus cases, we do occasionally have the instance of a lost load. That does happen. And it's possible that, you know, she crossed the border with these drugs in her car, got scared of actually delivering them, and just abandoned the car after she crossed the border and went back to her home. You know, we don't really know what happened because no evidence came in. He wasn't allowed to present his theory. Isn't that a good way to get killed? What's that? Isn't that a good way to get killed, be driving somebody else's valuable inventory and abandon it? I mean, I would think it is. But, again, no evidence came in about this. I mean, she wasn't asked about that. Nothing came up. I mean, it just doesn't make sense to me that he and she wouldn't both be in on the conspiracy to smuggle drugs for purposes of distribution, or else she would have gotten her inventory out of the vehicle, just the way you take your camera out of the vehicle when you sell it to somebody. Well, again, I mean, at this point it's just speculation. This case wasn't charged as a conspiracy. There was no evidence that they were working together to smuggle these drugs. And, again, like I said, I mean, in my experience, we do have lost loads occasionally. And so, you know, for whatever reason, people abandon them. They get scared. There's a threat. You know, they want nothing more to do with it. There's got to be some prejudice, though, to the ruling challenged. Well, I think, I mean, that's why I bring up the government's closing argument. They repeatedly hammered this. There's just not enough evidence for you to evaluate what her role was. And so the jury was left with this totally incoherent narrative. Mr. Rice's counsel got up and argued his theory that she was involved, but he didn't have any evidence to back up what his theory was. So he could stand there all day long and say she was involved, she was involved, but there's no evidence. So the jury's left with almost this stipulation between the parties. Well, you don't need direct evidence if you've got circumstantial evidence. And the circumstantial evidence would be if she left her inventory in the vehicle, that must mean that there was an intention on the part of both of them that she or their masters would subsequently have access to the inventory. That would be circumstantial evidence, although not direct evidence, that the defendant had the guilty knowledge necessary and intent. There was. Again, I mean, conspiracy or some agreement between them wasn't even argued. The circumstantial evidence that came in about Vanessa Sanchez was that she had given these inconsistent statements. That was it. It's sort of this innocuous characterization of the statements as inconsistent. I mean, the jury was left hearing that these were inconsistent. They could have thought that she had mistakenly, you know, that she had made these inconsistent statements by mistake. They were legitimate inconsistent statements instead of what they actually were, which was these sort of wildly different stories when she was confronted about the Xterra, totally trying to distance herself from the drugs, from the car. You know, I haven't seen that car in months. I don't know that man. I didn't even sign the documents. And so the jury never heard that. The jury was just sort of hearing about Vanessa Sanchez and thinking, okay, there's something about this woman. She previously owned the car. That's all they really knew. What's the offer of proof exactly? What the statements would have shown. What would have come in had the judge not? The two statements are at 185 and 189 of the ER. The first statement is she calls Agent Allen, who's the Bakersfield ICE agent. She calls someone claiming to be Vanessa Sanchez, calls him on the phone, and says, I met Mr. Reyes up in the Central Valley. I would go down to Calexico to visit him regularly. That took place over about a month. At the end of the month, he said, let me put a car in your name so that you can come down here and visit me more easily. They went to a dealer in Mexicali. He bought a car and put it in her name as they're driving back across the border. It overheats. She says, I don't want anything to do with this car. She never sees Mr. Reyes or the car again, and that was in June. She denies signing the DMV documents transferring the car to him in August. She says, someone must have forged my signature. I know nothing about that. Then 10 days later, the agent comes up, interviews her, and this is the statement at 189. He interviews her in person, and she says, oh, you know, I messed up. It actually wasn't Mr. Reyes. Those pictures you were showing me, that's not the person. I'm actually talking about Mr. Gonzales. That man I stayed with for 10 days in a hotel in Calexico. At the end of that period, he then bought me a car, put it in my name as we're driving across the border. It broke down. I left it. That was the end of it. So first it's that she's, you know, having a relationship with Mr. Reyes. She's going down there over a month-long period. Then 10 days later, oops, no, someone by a totally different name. I don't recognize anyone in those pictures. Now that she has the DMV documents in front of her, she now, or I'm sorry, the paperwork from the car sale, now she admits, yes, I did sign that document saying that I purchased the car for $2,000 at this Otto's La Comercial. She again says, I've never met anyone named Reyes. I haven't even seen that car since June. Was she subpoenaed by the defense? She was subpoenaed. Of course, she's in contempt of court, but she's not, doesn't show up. Who put in the evidence about the age of the merchandise or the age of the canisters inside the tires? Was that put in by the government? The government, how they were sort of rusty. Was that expert, was that qualified as an expert, or was that just somebody's estimate of how long? It wasn't qualified as an expert, but to be honest, and I can check while the government stands up, I can't remember, or the government may remember, I can't remember if it was the defense counsel on cross or if the government admitted that the tires were rusty. I'll reserve the remainder of my time for rebuttal. You may do that. We will hear next from the government. Thank you. May it please the court, Daniel Zip on behalf of the United States. Your Honors, there's one central issue in this case, and that's whether the district court properly exercised its discretion under Rule 403 in keeping out two pieces of evidence. So you're ready to stand or fall on the correctness of the ruling rather than prejudice? That's correct, Your Honor. Those two pieces of evidence in this case were the misdemeanor criminal history of Vanessa Sanchez and the substance of the out-of-court statements that she made to these interviewing officers. We would submit that that ruling was correct, and it certainly wasn't arbitrary or disproportionate such that it could be called a piece of discretion. But the evidence was not terribly confusing. It was pretty straightforward, and it would have made concrete something that was merely vague to say, well, there were some inconsistencies. What does that mean? What's the nature of them? Are they big or little inconsistencies? What is the subject matter of the inconsistencies? I have difficulty seeing the rationale for that when it is a recognized principle that a person can defend by pointing to someone else who they think is guilty instead. Well, Your Honor, I think that in trial it was confusing for two reasons. First, there was the kind of unique evidentiary posture of what these statements were. It's not as if the district court was trying to keep Vanessa Sanchez off the stand or keep anything she said out. What she was trying to keep out was essentially if those two statements came in for the truth of the matter asserted, they would be hearsay. But they plainly didn't. Right. The defendant contended that everything she said was a lie. I think that's where the confusion comes in. They didn't come in for their truth, so they're not hearsay. They're not hearsay. Right. I think everyone agrees with that. But I think that's what the court recognized would make this so confusing for the jury is that she would have to say, here's two statements. Don't listen to either of them for the truth of the matter, but just for the untruth. Isn't that something that happens in, like, 90 percent of all trials? There are standard instructions to deal with prior and consistent statements. It's kind of a staple of cross-examination. Well, I think that that in combination with the fact that the statements themselves were so far removed from what was actually on trial in this case, which was. . . I thought what he was trying to prove was somebody else had this car first. She's telling a lot of lies about it. Fair inference from that is she put the dope in or had something to do with putting the dope in, not me. I think that was the argument that he was trying to make, and I think what the judge did in this case was say that that last logical leap between what this woman. . . In other words, there's a lot of reasons that someone would give inconsistent statements to officers. It takes a couple leaps to get from that to the idea that this defendant who's on trial here today didn't know that there was anything in his tires. It takes the leap that she was actually involved in the drug smuggling conspiracy, which given the nature of her statements, I think the jury could reasonably assume that. But then it also, as Judge Graber pointed out before, it also takes that additional leap that there wasn't more than one person involved, that they very well could. . . Well, but one of these inconsistencies is she said, well, I was working with the defendant, and then she says, oh, never mind, I was working with somebody else. I mean, isn't that kind of relevant? Well, again, I think if you look at what the agent actually said in those two reports, the way that I understood it after speaking with the agent in trial there was that it wasn't a case. . . It was a case where she had a telephone conversation the first time. They were essentially talking past each other. He thought that she was talking about this Reyes Nieto guy. In reality, she was talking about a much younger person who she had met at a nightclub. Then when he approached her in person, presented her this photo lineup. . . So she says. She said, oh, no, that's not who I was talking about. This guy's . . . that wasn't Reyes Nieto. It was this other guy. Well, what about the age of the tire, the wheel, and the packaging and so forth that could suggest that the stuff was in the tire before the defendant got a hold of the car? Your Honor, if I remember correctly, the defense put that in through cross-examination, and their argument was essentially that the metal appeared rusty, which you can see I submitted some photographs, and that the interior had grease on it. There wasn't a particularly coherent argument, as I remember it. Well, it would be in the old parlance of the street, the SOTI defense, that it would be consistent with somebody else having had the tire first and in control of it, and that would help him on his reasonable doubt argument to the jury get that in. Right. I don't think there was any effort by the government or anyone else to keep that argument out, though. Well, the government objected to the evidence. You have a very capable trial judge here going off on a hearsay adventure, which really wasn't correct. But the government objected to the evidence, and the objection was sustained, and the defendant never got a chance to get the jury thinking about some other dude did it. Well, I don't think that's true. I think the defendant was allowed to put in a lot about this Vanessa Sanchez. He introduced into evidence, and the jury had before it all of the DMV documents showing that she had previously owned the vehicle, that she had signed it in her name two months before his arrest, and that she had signed the document giving it over to him. They heard evidence that the... But that's no good. What's good is, and she lied about it to the cops. Well, they asked the agent whether she gave inconsistent... Whenever somebody lies, and he proved they lied, that invites an exploration of what their motive might be to lie. That was the point. That is what they argued in closing. The defense counsel said she met with these agents, and she lied to them to distance herself from the car. So that line of argument was... But that's only argument, and I assume this jury, like all juries, is informed that the lawyers don't give evidence. And I guess the key thing that concerns me about the ruling is, whether, since you're not relying on the prejudice issue, whether it's enough to say she lied, and she was inconsistent. Well, what does that mean? Did she lie about her age because she was vain, or did she lie about owning the car? I mean, there are lies, and then there are lies, and if you don't know what they are, how can you be persuaded? Your Honor, I would say that, in this case, the judge was weighing the confusing nature, as I mentioned before, of the limited non-hearsay nature of those statements. Oh, she said that. Well, I know she said that. It seemed like an afterthought. She said at least twice, this is hearsay, this is hearsay, it can't come in, and then said, oh, and also under 403, it seems too confusing. It seemed like just sort of an afterthought of bolstering more than. I think that the primary ruling was that it was hearsay, which seems incorrect. Well, I think the transcript shows that the defense counsel, when that hearsay argument was going on, defense counsel said, no, I'm not trying to introduce these for the truth of the matter asserted, I just want to introduce the fact that she gave inconsistent statements. And the judge said, okay, I agree on that point, so you can ask him whether there was inconsistent statements. But I think weighing the additional color that would come in as to what those statements were, given the fact that this occurred months before the crime, and given the low probative value of this, and that it would take several leaps of logic to get from her being involved and to this defendant not knowing that there were drugs in his car, I think that at the very least it wasn't an arbitrary decision or a disproportionate one that would be called an abuse of discretion. Well, it strikes me as an odd one, because ordinarily a prior inconsistent statement is the statement, not just the conclusion that it was inconsistent. I mean, it's a very unusual examination where it's the prior inconsistent statement, but we're not going to tell you what it is. I guess it just strikes me as unusual. It certainly was an unusual evidentiary posture, but I don't think that it was arbitrary and I don't think that it was an abuse of discretion for the court to weigh that minimal probative value versus the risk of confusion and the risk of misleading the jurors onto what someone else said who wasn't in court about what happened months before the incident that was the subject of the trial. If there's no other questions, I would submit. Thank you very much for your argument, and we have some redoubled time remaining. Three quick points, and I apologize, Judge Goodwin. I can't find the ER site for the rusty tire testimony, so I'm happy to submit a letter to the court when I find it. We'll find it. I can't find it. My first point, I know the government doesn't want to talk about prejudice, but, I mean, here the prejudice was pretty clear. We have all the things that a court normally looks at when it looks at harmlessness. Circumstantial case, not overwhelming evidence, no real evidence of what happened, but we also have the additional two points that the trial court made. Judge Gonzales at the end of the trial said she really expected a hung jury, and that's just based on the evidence that came in. So she expects a hung jury when the jury's just told the sort of gappy story about Vanessa Sanchez and just knows that she made these inconsistent statements. It seems that there was prejudice to Mr. Reyes. It would have made a difference to the jury had they actually heard what those lies were. We also know, Judge Gonzales also says at the end of the trial, that this was a very diligent jury. They spent four hours deliberating, didn't take a break. That was four hours on one disputed issue in the case. The only disputed issue was his knowledge. They spent four hours trying to figure out what he knew and didn't even have the benefit of her statement. So I think the prejudice is pretty clear here. We have more than this court normally looks to when it finds that the error was not harmless. Second, the government says that we were allowed to argue that she lied when she would talk to the officers. But the government, again in its closing, told the jury there's no evidence that she lied. There's no evidence of that. And so I think Judge Graber made that point. It's just his theory. It's just his argument. There was no evidence because they kept that evidence out. So I see I'm over my time. Thank you, Counsel. Thank you. We appreciate the arguments of both counsel. They've been very helpful. The case is submitted. And we will take about a seven or eight-minute break until the final case of the morning docket.
judges: Goodwin, Kleinfeld, Graber